May it please the Court, Richard Lawson for the Plaintiff Appellant Families Lee and Jurek. Time permitting, I'd like to reserve three minutes for rebuttal. There is one core issue before this Court, which is do policies which discourage disclosure of a child's transgender status to the parents, does a school policy that discourages such disclosure violate a parent's fundamental rights under the 14th Amendment? If you look at the statement of the case presented by the district, there are a couple of reasons put forward for what motivated the policies. They want to create... Before you go there, can I get you, it seems like it's been shifted a bit over the process of the litigation. As I understand the current, the operative complaint, you have a claim under substantive due process only. That is correct. No First Amendment claim. No. Okay. That is correct. We're just under substantive due process. Yes, the original complaint has seen some significant modifications. We would submit that the one count that remains in the First Amendment complaint was in the first version of the complaint, but we've eliminated some of the defendants. We eliminated some of the plaintiffs with the children. So it's a very, very narrow on this issue. I think this also touches in to some of where I think some of the district court may have erred, maybe in bringing over some of the analysis that had been there before. Could we just... I'm interested in your telling us a little more about how the substantive due process claim may have evolved since the original complaint, and in particular, just trying to pin down what exactly the contours of the parental right are that you're advancing here. I mean, it seems like there are a number of formulations in the brief, and it'd be helpful if we could get... Sure. If we could get the distilled core version of the right, and I'm going to throw something out here to see if I'm understanding it correctly. It seems like the parents are arguing they have a fundamental right to receive information from the school, even if they haven't asked for it. I would not put that as the core argument that we're trying to raise. Well, I'm not talking about the argument. I understand. What's the right? How would you articulate the parent right that applies here? The parental right that applies here, I think, is best put forward in the Supreme Court's Troxell case, that it is presumed that FIT parents act in the best interest of the child, and furthermore, that best interest decision is one that is accorded absolute deference to the FIT parent. Our position here is the school district's policies are ones that presume that the district knows better. Well, now you're moving off the right. Yes. I'm interested in whether this case, in this case, you're trying to expand the scope of substantive due process, or whether you're taking what's already established and saying that it's the circumstances here that violate the right. We're definitely trying to do the latter of those two points. We are definitely trying to argue that under the established parental rights of far more—this is not where—I want to be very clear, because this was a little confused. We did raise this a little bit in the original complaint, and I've played an issue in the motion to dismiss. There is no issue here that we are trying to control the curriculum at all of the district. That is not the issue. The issue is we have essentially a health issue between the children and the parents. But you don't—I really was looking and looking, thinking that this was going to be argued as a major medical concern and a health issue. It's not in the briefs. There is no argument. You don't even cite the cases about treating parents' rights to decide health issues. You've got the one abortion case, but—so it didn't seem to me that's what you were arguing. I would submit that it's under the Parham case, where the Supreme Court there is discussing that the parents' right is superior on medical issues. They state most children are not able to make sound judgments regarding their medical care. But point me to somewhere in the brief where you said gender dysmorphia is a major medical concern, and that's what our argument here is, that we have an absolute right to information about a major medical issue affecting our children. I looked and looked for it. I would look to the complaint where we talk about the discussion about suicidality that was raised in the sessions. I mean, it's—on its face, this issue is acknowledged by, I think, all parties, that there are major health issues associated with it. I think the court is correct. But it seems, though—I understand what you're saying, and I wondered the same thing as Judge McHugh. But it seems that the arguments take more the form of the parents' interest in making decisions about the children's education, not medical decisions. Now, if you wanted to argue that, that's your prerogative. But the question is, is that really what is now being put before us, and is that what the district court understood the argument to be? I submit that our brief tracks our motion for leave to amend, in which we make it unequivocal that we are not arguing any sort of the long litany of cases discussing parents choosing whether to go to a public school. We're not—I tried to make that very clear in the motion for leave to amend. And I would submit that one of the key errors from the district court is we rely on Troxel quite heavily. She barely gave it any attention. It was only one passing reference, and not on the point. And I guess really where I'm coming from is I was conceptualizing our argument on the ideas of the best interest of the child being very different from the, hey, if you don't like the school curriculum, what right and power does a parent have to go in and deal with this? This is not a challenging curriculum issue. We were viewing it as best interest of the child. I was placing within that the health issues at play. Counsel, let me ask it this way. What did the school have to do so it would not commit a substantive due process violation? It would not have had structured a set of policies that— And that is so vague. Can you distinguish between the written ones and the action ones? When you say policies, that brings in the whole universe. Sure. We cite to numerous points in the guidelines where it talks about how if a parent is to ask a teacher, the teacher is to use the— So written. You're talking written. Yeah, there's written. And sorry to interrupt you. Keep on with the answer. What did the school district have to do? Well, there's some other aspects of the district's actions I could discuss. But if you're—what it could have done is not presumed that there was any reason to mistrust or think that it could have done a better decision than the parents. That's what I believe. That's what I would submit to the court, is guiding the guidelines and policy. What if the district had a policy that said, we have this transgender issue. We don't want children being hurt. And therefore, any time that there's an indication of a transgender issue or there's taunting or something like that, we're going to immediately get on the phone with the parents and tell them about this and offer some sort of services. Would that be okay? Well, I don't think there would be any problem with that. But I want to be very careful about this. I know this has got to be something the court's wrestling with, is I'm not looking for that order. If you, again, looking at Troxell, if you look at the way Justice O'Connor is really trying to narrow the decision by not saying, hey, you can't have these visitation petitions. They're simply saying a visitation petition, and this comes back to full circle. A visitation petition which gives no deference to the parents, even with judicial review, was inexcusable there. So I would submit that policies that didn't discourage disclosure would be fine. I'm not looking for, and I don't think this court needs to issue an order saying, you need to disclose. I don't think this is a mandatory disclosure. I thought that was what you wanted. No, I'm not. So under the law from the Supreme Court, a substantive due process right has to be very narrowly and clearly defined. And I still, sitting here having done all the work, do not understand the specific parameters of the substantive due process right that you claim the parents had and was violated. And I'd still like help with that. As clear as we can be, the best interest of the child under Troxell is full deference is due to the parents. These policies gave the deference to school administrators. That's the problem. Well, counsel, you have various and sundry policies, although the one that seems to get quoted the most is described as the guidelines. And both you and the district take passages out of the guidelines to support your positions, which I suppose leaves one in the position of having to take everything as a whole. But let me just give you one example. At one point, the guidelines say if a student initiates a conversation about needing support at school related to the student's gender identity or gender expression, the school counselor will encourage and discuss with the students how to inform and or include the parents in this process. Wouldn't it suggest that the guidelines encourage parental involvement and disclosure rather than discourage it? I would submit that specific provision still gives an option. And furthermore, right in the context of all the district secrecy policies, the written guidelines, the frequently asked questions on the website, the practices we allege in the First Amendment, when you look at everything in there, the deference is we may know better than the parents. I would submit to deal with a situation that the court can't be oblivious to where there might be true hostility with a parent, go get a court order. Don't just make it on yourself. That is the Santosky decision from the Supreme Court, where you've got to have some due process when you're interfering with the parental right. And again, to reiterate and apologize for lack of clarity, I thought it was, the parental right is the best interest of the child to make these important decisions. So then what is the rule that you want? So you said it's not that in every instance they have to tell the parents, which frankly I thought was... A policy which discourages disclosure is impermissible. It violates the decision of the best interest of the child because it shifts... But how far is that going to go? A policy that discourages disclosure about what? What are some other topics besides the one we have here? Because it seems like this right that you're describing would cover a lot. Let me submit, I think the court could draft it specifically to these facts on the transgender issue. And I think one issue to give some clarity of why there isn't a real parade of horribles coming from an inartfully drafted or what we think is narrow position. A policy which discourages disclosure, the teacher, the administration, everything has to stay silent. A policy which just kind of leaves it up to the school so that the teachers and the administrators can use their judgment. If some little kid in third grade said, I'm a cat today, do we need to go call the parents? No. If they get up and say, hey, I've got some real issues, I want to change everything. To have every step of the policy go towards discouraging disclosure, I would submit is a problem. And I'd direct the court's attention if I could. I did not cite this, but part of the issue that we're looking at is that all of these guidelines create this sort of environment. And I would submit that I think... Well, but do you concede that there are some parts of the policy that actually do provide for disclosure? I would submit there... I don't think there's a position in here that prohibits disclosure. You might be able to argue that the section talking about when the parent asks the teacher and the teacher is to not answer, that could be viewed as a discouraged disclosure. But even then, it's pointed to the counselor. But even then, returning again, the counselor can use their judgment. Counsel, and maybe you'll get some extra time, because this is a big case. But here's what I need help with. It seems to me there are ships passing in the night. There are these written policies, and what they contemplate is not what happened here, but instead the child coming to the guidance counselor or teacher and saying, I'm having these issues. And therefore, you go down that track and you go through those policies. And if that were the case, then we'd be deciding whether these policies infringe on the parental right. But what we have here instead is the school people, teacher or right, RIAP, Chambers, Delahunt, the principal, doing something entirely different, which is out there basically recruiting. I'll use that word. They're recruiting. And they have this meeting and call it art. And you just say, my heavens, what in the world? But that doesn't mean that those other policies for a voluntary situation are suddenly transported over to this situation and make policies. In other words, why aren't they rogue employees? There's nothing in those written policies that says, get up a club that you call the art club and instead bring them in and tell them they're going to commit suicide unless they acknowledge they're transgender, if they're confused about the body or something like that. I get that. I get that that's a huge issue. But where is the district policy that says to the teacher, to the guidance counselor, to the substitute teacher, go ahead and do this GSA alliance and get your kids huddled and then tell them these various things which parents have a complete right to be objecting to, and we'll call it a school policy. That's my problem. They're two sides of a canyon. So let me put it this way. What was going on, what we've alleged in the First Amendment complaint, were that this was not instruction as much as it was guidance for children who may want to be transitioning. We don't go so far as to say recruiting, but that was the court's word there. If that's what was going on, working with the individual children on their own journey, they would be acting in harmony with all of the policies, the guidelines, the frequently asked questions, et cetera, which all foster you can trust us more than your parents. That's all coming from that perspective. But we already know that. We don't need those other policies for that. We know that that's what the teachers told them. Well, but what I'm driving at is that the act, to go into the Minnell angle, if the causal act here is what was going on in those clubs, it's in harmony with the policies which are in violation of the best interests of the child angle. And I would cite, that's been our argument going forward. I did not cite this in the brief, so I apologize for that. But I would direct the court's attention to the Croson case, 983 F. 3rd, 1166, where this court talks about the Minnell standard and the policy, and I'm paraphrasing here, but policies may be unconstitutional precisely because they fail to ensure that a single officer is in a position to prevent the constitutional violation, where the sum of officers' actions result in the violation, the municipality may be liable. And I would just direct the court's attention to the factual pattern here. We have three club meetings in a row, and the third club meeting takes place after the principal has been put on notice, and it's still going forward. So we have a policy which says, on the individual child's journey, which I would submit is not related to any core issue of the school's district. It's not helping a free, a discrimination-free environment. It's not dealing with when and how to address transgenderism. This is about the child, that individual child's journey. The policies say we're going to help the child, even if it means keeping the parents in the dark. That is the request. Okay, but you haven't made a policymaker argument. You haven't said the principal sets policy for the district. No, but I would submit the principal, everybody's acting downstream of those policies adopted by the district. But you haven't made that argument, or that claim, that the principal is a policymaker. No, I would submit that that's part of the operation. Okay, so if there were full disclosure, I'm just trying to get my hands around it, because some of the relief that you're seeking is that the public school pay for private schooling, right, which is going to be really expensive. We had. And so my question is, what can the school do that will satisfy you, and would this do it? There's transgender out there. There's sex education out there. There are various things that are out there. If the school said, we all recognize the community that these issues are going to come up, and so any time it comes up, our first call is to the parent, unless we get a judicial order or something saying we don't have to talk to the parent, and the parent can opt out. Are you good? Oh, that would be fine, but we don't have to have that. I don't think this court has to order that. I'm not saying we're going to order it. I'm just trying to get my hands around what your argument is. Would that be sufficient that you would say no longer? We would be sufficient if they just got rid of policies that overall throughout discouraged disclosure. What if there had not been a guidelines, but instead the teachers had just done this meeting on their own? Then would you contend that there's a policy? It would be much more challenging. So no? I don't think. I think. We do. Yes, you need the whole entirety. You need the guidelines FAQ. I apologize. I know you're out of time, but I ask. It's the court's pleasure, I think, on this. So as I read your complaint, you're claiming damages because of the failure to notify the parents or the presumption that the district knows better and not to notify. And I have a problem with causation with respect to CL. CL comes home from the meeting and immediately discloses to her parents, which is probably a testament to the parent-child relationship, which to me undermines your argument that somehow they're injured by this policy of not to tell the parents. Because whether they told her or not that she could keep it to herself, she went home and immediately involved her parents in this issue. The policies assume or discourage disclosure we would submit out of a presumption that there may be some hostility. And our allegations in our complaint, it is more than just an advisement to the students to not tell the parents. It was you may not be able to trust them. And that did, as we allege in our complaint, poison the relationship going forward. There may not be million-dollar damages, but there will be damages there. But it's not just that – I urge the court to take a look at the first amendment complaint regarding damages and what was said. It wasn't just don't tell your parents. She may not be able to trust them, and it's our allegations that that ruined the relationships with both children. Well, I think the question, though, that was just posed to you is how did the policy cause that to happen? Why did you allege that the policy did that? Because the policies are establishing a norm within the school district that this individual child's gender issues, transition issues, are ones that you may not want to be discussing with the parents. So the statements made at those GSA clubs are in total harmony with those overall policies. But obviously CL trusted her parents enough to go home and immediately disclose and involve them in the discussion. But there were several months' worth of very strained relationships with their parents. And we would submit that having been advised you may not be able to trust your parent, that didn't help. But there's nothing in the guidelines saying about you can't trust your parents. The guidelines are all about the student having control over who gets to know and when they get to know. I would submit that the guidelines don't trust the parents – or the import of the guidelines discussing trust of the parents comes from why would they not want to disclose? It has nothing to do with an environment free from discrimination or a safe learning environment. How does it help either of those goals to not tell the parents? It's coming from a mistrust. It's coming from what Tromso shot down with judicial review, not ex parte school like. Judicial review of you don't presume better. Counsel, could we maybe pull back and think a little bit about how this case would be situated in constitutional law generally? Substantive due process maybe a little more particular. And that is, it still seems that the right being claimed here is a right to get information that the parents didn't get in this circumstance. And I understand that. But can you point to any case law, whether it's substantive due process or some other area where the Supreme Court or some other court has recognized a right to obtain information as a matter of constitutional right? The only thing I can point to is very little. I think there is a developing body of law that's generally going towards the idea that prohibiting disclosure is violative. And again, I've made the arguments such as that may exist in this case. The only other point I could raise is what I found in the supplemental authority last week. This is a decision out of Kentucky. It's a First Amendment case, though. Yes, but it did address 14th Amendment parental rights. If you will indulge, it's a little convoluted. There was a June injunction that was ordered. And the court said, these rules will discourage disclosure. This violates the 14th Amendment. It's a district court in Kentucky. This is the 10th Circuit. I understand. I cite it because it's about the only thing I could find. And I will reference, for whatever it is worth, that that injunction decision did get before the Supreme Court in some limited capacity. Granted, it was just a stay, but it's had something. And then furthermore, the reason we filed it last week is it did survive, or the court adopting that argument from the June granted summary judgment. So it was a little more thoughtful, a little more time involved with that. That's all I can give you as far as, hey, has anybody else been down this path? Well, OK, but can I just maybe try to restate what I think I'm hearing, which is it isn't so much a matter of claiming a right to obtain information. It's more a matter of the school discouraging the provision of information. Correct. Is that what you're saying? Yes. For better or for worse, that is very much what we are asking about. And that is what the teachers were acting in conformity there with. And that's what poisoned the relationships between the children and the parents. That's our harm, to whatever degree it may be there. I appreciate the court's indulgence. Maybe if I could have like 30 seconds, if needed, for a rebuttal. Thank you. Thank you, counsel.  Good morning and may it please the court. Jonathan Farrow on behalf of Poudre School District. This case seems to be, notwithstanding some of the comments we just heard, really about two families' desire to dictate public education of their children. And I still believe, based on the way this case has been presented, that to them a public school really has to be like a smorgasbord. Sir, nothing wrong here. What's that? Nothing bad happened here. You do the same? This is all good? I will address that. I mean, I don't, I have to take the allegations as they're presented. But I don't think that they're, even if you take everything they say is true, that there's a constitutional violation. To them, a public school should be like a smorgasbord where they can pick and choose what topics their children will be exposed to. I, you know, that may have been the position in the first complaint. But in the amended complaint, there's been a sea change, as I compare them. And they're no longer asserting a right to control curriculum under my reading of the arguments in the brief and the amended complaint. Well, I don't, I think I've heard it both ways even today. Even today, I've heard it both ways. They're saying, I heard it discourage the issues, the policies. They say it discourages disclosure. And then yet I heard a comment saying that, well, the moving force of the constitutional violation was the actions of the employees. And as Judge Phillips pointed out, there's two sides of a canyon here between what they say the employees did versus what the guidelines say. And I think they're trying to ride the line of both. They want them both and they need them both. I would focus on the right of a parent to have information about a child who is struggling with potential gender dysmorphia. Right. And go back to my analogy, because parents don't attend school with their kids generally, right? And so if you think about the smorgasbord example, you have to know what's on the menu in order to say, I want to opt my kid out of a certain thing. I have to know that it's on the menu, right? OK. What is the underlying right at stake to be able to say, I have to know what's on the menu? Well, I don't think they're saying I have to know what's on the menu. They're not saying you can't have this club. They're saying if my child indicates that she is struggling with her gender, then your policies should assume that I will make decisions in her best interest and give me the information I need to make those decisions. I think that's the argument. I'm not sure. But if that is the argument, I mean, we're still talking about they say that there's information that a school constitutionally must provide them, whether it's a class, whether it's a discussion about sexuality, whether it's a club, whether it's something that a student expressed that they say a teacher then must convey that to the parents. It's the same concept. What's the underlying constitutional right at stake? I mean, there are a lot of things that it maybe could be. Or they've said, as you said, Judge Matheson, there are multiple formulations in the briefing. What they've doubled down to on today, and I think they did in the reply brief too, is they say, well, our case is based on Troxel. And they said, we're not expanding. We're not seeking an expansion. OK, well, then let's take them at that word. Well, counsel, maybe we could split this into two parts. So the parents are concerned that they've been kept in the dark about certain personal issues regarding their children. Now, do you agree that that's a legitimate concern? I'm not asking if it's a constitutional violation. I'm just asking you if it's a legitimate concern. A legitimate parental concern? Sure, I don't disagree with that. All right. Then why isn't it? The guidelines recognize that. OK. Why isn't it a constitutional concern? Right, because where is the authority that says that a parent has a substantive due process right to know everything that happens in school about their child? Well, I don't think they've. I don't think that's what they've. Well, narrow it then to sexuality. Nether it to gender expression. We're not in the business of making arguments for either one of you. But the question is, how do you define the right that they're arguing? And how do you think that's broader than what the right really is? Isn't that really what this is about? Yeah. And as I've said, I've tried to tell you what I think it is. And I think you all are saying, well, maybe it's something else. I mean, I think they've said it's multiple things. OK? So I try to take them as a bit of a piece here. So I think what they're saying is that, on the one hand, they think they need. They say they have the right to opt out of public education. Agreed. Pierce, Meyer, and Pierce. Right? So the state can't punish them for saying, I want to homeschool my kids, or I want to have a parochial education. OK, fine. And that's not the claim, right? That's not the issue. That's not the harm. So I think what they've said at various times in this case is that they need information in order to exercise that choice.  Right. And you asked at the very end. Again, the argument today is not quite that. It doesn't seem to be the horse that's been chosen. But you asked Judge Mathison at the very end of the argument. You said, show me the case. Right? And I'll tell you the case they didn't mention, but they put it in the reply, which goes on this notice concept, was Wiley. And that's a District of Wyoming case. And I think it's telling that they chose not to push that today. But it is, of course, factually distinguishable, as we point out. And it seems like they've abandoned that theory. That isn't their constitutional theory. But hey, it's been out there on the table, and I think we should address it. Well, let's look at Glucksburg. At which one? Glucksburg. Glucksburg. OK. And that is sort of setting out the categories of substantive due process that exist in the world, U.S. Supreme Court. And it's one of those rights as to direct the education and upbringing of one's children. So that's the core right we're talking about here in the substantive due process area. And let's assume that their argument is, I can't exercise that right without important information about my child. And their position is, your policies discourage the school district and the teachers from communicating to them very important information that they need to direct the education and upbringing of their children. That's my best guess of the substantive due process framework here. Respond to that. Sure. Again, I'm not sure that that's what it is, but, yeah, I'll be happy to respond to that. Because, again, I think that first let's go back to what we have in our circuit. And that's the Swanson case. And I think that's the closest decision we have in this area. I think that that case, granted it doesn't go that far, it was a case about homeschooling. And they wanted to do selective homeschooling, right? So they wanted to – it's my smorgasbord. They wanted to – I want this, but I don't want this. And, again, but take that a little further. But that has nothing to do with what they're arguing today. I think it does. Because you can't pick and choose without knowledge, right? Take this to its conclusion. The whole point of their argument is we have to know so that we can say what we want and what we don't want. If a child had a seizure in the classroom, do you think there's any obligation to notify the parents? I'm sure there are. I can think of probably numerous statutory obligations. Is that a substantive due process claim? I wouldn't conceive that today. I don't believe that that's ever been recognized. But you're getting closer to medical, which they've disclaimed today as saying, no, that's not what we're saying. No, I think they tried to argue it today, but I don't think it's in the brief. It definitely is not in the brief. So there are some instances where you would acknowledge that the school has an obligation to notify the parents about something that is affecting their children. I struggle to think of a constitutional obligation to share a specific granule of information. That's where I struggle. I'm not at the moment asking you about constitutional. Other issues with statutory law and administrative rules, yeah, I think there probably are numerous things that have to be conveyed. But again, if you take that and say, all right, constitutionally, what is it that parents get to do? Our circuit has rejected the notion that it is a pick and choose type of thing. And so if that's sort of the extending piece of where you get the notice requirement, logically, I think, analytically, it doesn't make sense. So where else does it come from? I think that's why they've said, it's Troxel. It's Troxel. And Troxel's a parent custody case, right? So it's not even sourced in the place that you pointed to, Judge McHugh. I mean, it's sourced in custodial right, the right of a parent to be the custodian of their child. And a judge is taking away visitation rights. And so it makes perfect sense that there's some heightened due process interest here. We have to have procedures before you can, a declaration of judicial affairs. Let me ask you this. If the parent asked for information, would it be OK for the school district to give them false information? If the parent went to the school district and said, hey, I want to know, is my child attending the transgender club? Would it be OK to say no when the truthful answer is yes? I don't know. I haven't really grappled with that one. I think that's the Wiley case. And the judge in the Wiley case said, I would have a problem with that. It isn't this case. That isn't what's alleged. What do the district policies say? About that? They certainly don't say lie to parents. As I think the panel pointed out. But what do they say? What do they say? Do they say the school should answer the question honestly? First of all, they say healthy communication between educators and parents, which you pointed out. And then they say there's several statements that address this. They say you should defer to, I think, the social worker, right? If a parent asks. Yeah. But they also have a policy that says, if you're using a different name for the child and different pronouns for the child at school, it's OK to use that at school. But when you talk to the parents, use the pronouns that the parents are aware of and the name the parents are aware of. That's what it does say. It does say. Yeah. Isn't that essentially giving false information? No, I don't think so. Why is that? I mean, because, again, and I agree with what Judge Matheson said. It's like, hey, everybody cites the part that they like the best. And that's what we do in cases. But if you take it as the totality of the circumstances, I think that's an oversimplification with respect. Because what it's trying to do is, these guidelines are really trying to get to the crux of, what about when there's an instance where the student isn't comfortable with that being shared with their parents? And that's what the guidance counselor is supposed to resolve. And to directly answer your question, the guidelines say, staff members should refer them to the school counselor. OK, so that's the professional here in our school district that is the one that should handle this. And it says, who can address the question and concerns that the parent guardian may have? So the guidelines fully contemplate that there is an exchange of information between counselors and parent and guardian. And then it says, they should use their professional judgment to determine how best to follow up with the student and then the parent guardian. So in practice, the way that this happens— And here's how I understand the argument. It is that it shouldn't be your decision. It should be ours, because there is a presumption that a fit parent will make decisions in the best interest of the child. That's how I understand the argument. What's your response to that? I think that probably is the argument. It seems to be what I definitely heard more of today. What's the response to that? Well, I can understand why a parent may say, that's my call. But where's the legal authority that says that that's a constitutional right and they haven't identified it? We're expanding. That's what we're doing. That opens up one thing I wanted to run by you, which is this. Judge McHugh cited—Glucksberg identified the parental right that Glucksberg articulates, correct? That parents have a fundamental right to control education and upbringing of the child. That is an established parental right, correct? Agreed. And again, Meyer-Pierce— That's all we need. That's an established, substantive process. Direct them to homeschool or private school. So, one way to look at this, it seems to me, is to say, okay, now that is an established right. And maybe the argument that you and opposing counsel are having really isn't about what the right is. That's the established right. It's more an argument as to whether it's been violated by the school, by discouraging the provision of this information. It isn't so much a claim of right to notice. It isn't so much a claim of right to information. It's more a question of the school, by adopting and implementing these policies, is infringing a right that has been long established. Now, why isn't that the way to look at this? My time is about to expire, but I would like to answer your question. Well, you're going to have extra time. Yeah, I think, you know, look, these cases are interesting in that regard because you can start your analysis from the, well, what's the constitutional right, or you can start your analysis of, well, what was alleged to have happened here, right? And so we can look at it from either direction. And I completely agree with you that you ought to look at both directions in this case to evaluate and see what the district court's analysis was. And so what is it that we have here? So we've talked a bit about the guidelines, right? We've talked a bit about that. And I think it's, again, I want to make this point very telling that they said today, discouraged, discouraged, discouraged. That was the language used. But go back to what the district court evaluated in the complaint. The language was a lot stronger. Deliberately conceals. That's in paragraph 9, page 202 of the record. Fails to notify. Instructs children to conceal information. Okay, I mean, but, again, the guidelines don't do that. They don't go that far. And so I think prudently they've said today is we say it's a discouraging. And, I mean, that's a characterization. And then we start talking about inferences and whatnot. And I disagree. I'm going to jump in. Isn't your answer to the question, shouldn't your answer to the question from the district's perspective be that even if there is this established right, we haven't infringed it? Sure. All right. The guidelines don't infringe it, nor do the actions of the employees. The district court order that we're reviewing really spends most of its time on the Monell elements, correct? Yes. Why aren't we talking about that? Well, I'd be glad to talk about it. I do want to say there are two orders. All right. Let me ask you a question about that. So we have Monell, and we have the plaintiff needing to show a policy or custom and the causation of an underlying violation and deliberate indifference. So far so good? Sure. Okay. So assuming the district has an official policy, whatever the totality of it is, you can take this part and that part. But there is a policy. I mean, we have it. It's written. Right? That's a policy. Well, hold on a second. We have guidelines. How is that not a policy? I mean, I work for schools, and a school board policy is something that's been promulgated by the board, a formal policy. A Monell policy is something different. Well, again, they don't say who adopted the policy. Are they a final policymaker? They very well may be, but it's their own lives. Is that your argument? I mean, if that's your argument, if there's no policy, they don't have a Monell policy. It's one of many arguments. Well, have you made that argument, that there's no policy? I thought we did. I thought we have made that argument. Well, I think you've made an argument about what the policy says. It's not our primary argument. But are you saying now there's no policy? I don't know. I'm saying that I don't think that they've pled that the guidelines themselves are a formal district policy by a policymaker, that that's the formal policy or statement. I mean, we have allegations, and you can see it. It says adopted and revised 2023. What was the formal policy in effect at the time of these allegations? It just doesn't say. They seem to be more focusing on informal customer policy, and fine. I think that's their primary vehicle, and that's where our argument's primarily focused. Well, aren't they saying that that was 2023, but on information and belief, that's what the policy was in 2021? That's what they said, yeah, upon information and belief. Well, isn't that something to get you past the motion to dismiss stage? And when you get into discovery, you can find out what policy was. I mean, isn't that how it works? I think it's very thin, and that's our point. Okay, so even if you disagree, then you have to parse the guidelines, and then what is the policy established by that document? So that's element number one. Assuming that there is a policy, and I know you're not conceding that, about disclosure, why didn't that policy cause the alleged violations here? We're on causation now. Sure, I'll follow you. So why did the guidelines not cause it? Because the guidelines, as Judge Phillips said it better than I can say it, the guidelines didn't dictate the result that they say happened at the GSA meeting. You're saying that they're rogue employees. Yes, and I'm also saying that's their alleged moving force. And you say that in your brief on page 27. You describe it as it leaves their claim reliant on alleged rogue employee acts, which I have no idea what that means. But I thought it meant that you were saying that they were rogue employees, so they can't be setting or interpreting policy. Is that correct? Yeah. Okay, well, they do allege in the complaint that the teacher who invited the students to this GSA after school art club, that she's still employed. And the principal came by the home, he wanted to meet at the home of the Lees, and said there wasn't basically any problem with what Ms. Ryop had done with the children. Why isn't that enough to say that what you are now calling rogue employees were simply implementing the policy as the whole school understood it to be? Well, again, they use the phrase agency. And so I'm just saying they identify Benedict as the principal. What's the answer? You're going off on something else. And I asked the question for a reason. I'll try and answer it again. And if the answer is I don't know, I'll accept that. But what's the answer? No, I think I can answer it, and I'd like to try. So Benedict was the school principal, right? In the meeting you're talking about, they say it happened four days before the last of the three meetings that they allege. So within a four-day time span, they've never said it this way. And maybe you're getting, I mean, are you saying that Benedict is the ratifier? I'm saying that we have a complaint, and we have a 12B-6, and we're giving inferences. And they allege that Ryapu had done all of these things and all of these statements at the art club, that that was the school's policy. It was hand-in-hand with the guidelines and the other documents they rely on for policy. It's all one big package. It's one thing. But they're not rogue employees. And if they were rogue employees, something bad would have happened for doing this. But the complaint, if we give them the inferences, nothing bad happens. Okay. Sorry, I think I follow what you're saying. I guess my take on that in response is that if you're going to fault, if you're going to hold the employer as a governmental entity liable, right, and you're doing it because of things that employees did, you've got a couple theories. One of them is that those employees acted pursuant to an informal customer policy or formal policy, right? Okay. I think we've established our position is it can't be the guidelines. Why? Because the guidelines don't say all the things that they say that Ryapu did in the meeting. It's a basket. So if you examine them individually maybe, but we're looking at a basket. And if part of that basket for interpreting what the guidelines and the written documents say is go ahead and do your art club after school and tell the students this, then my question is why isn't that the policy? We don't have any sort of indication from the complaint or the arguments that the teacher, the guidance counselor, the substitute teacher did anything wrong. And you started your argument kind of dismissive of the claims and that there was something wrong here, which just reinforces to me that you think everything or the district thinks that the teachers and the counselors all did well, according to the written policy. No, I mean, I just I have to take the allegations as presented at this stage. I mean, obviously, the district doesn't agree with all these allegations. Okay. And that's part of part of informs my argument. But I understand. I have to live with the allegations they've made. And that's where we are. And this was decided on a rule 12 motion. And we asked that. So we that's the result. So I'm not in a position where I can contest the the individual employee actions. But I what I'm trying to say is, I think, again, if there's nothing special about this allegation that they had, they told Benedict and four days later, another meeting occurred. And then there's nothing that happens after that. This alleged there's nothing special about that in terms of Menel. Right. I mean, you can have more than one rogue employee. The issue is, who are they? What's their what are their authorities? Right. What are their legal authorities? What have they been delegated? Do they have the legal authority on the actions that are being challenged to bind the district? Are they acting consistently with a policy? Or are they acting inconsistently with it? And if they're acting inconsistently with it, was it ratified by someone who did have final policymaking authority? Those are all the defects here. They just haven't been alleged. You can give them every inference in the book. And they just it's not there. It's not enough. And I think that's what Judge Wong recognized. Well, Judge Wong said the policies don't prohibit the school from telling the parents. And seemed to think that was enough to dismiss the claim. But I think the argument is that the decision about what to do if a child has these issues should not be made by the district without the input of the parents. And so the parents should be involved. Well, okay. And again, if that's I first have to go back and reiterate what I think I probably at least tried to say, which is there's no that's not an established substance of due process right to say, I get to make the decision about a gender expression of identity at school. That the parent exclusively has that. And the school can't intrude on it. And therefore, by doing that, it has somehow violated, as they put it today, violated Troxel, a parent custody case. It just doesn't it's just not there. And I mean, look, I mean, we know what their destination is. Their destination is Washington, D.C., I'm sure. It's just that our point is that they just don't have a viable constitutional vehicle under established case law to take them there. Could I just ask your understanding of what constituted the violation that's being alleged here? Was it what happened at these GSA after school sessions on May 4, 11, and 18? Is that the alleged constitutional violation? Or is the alleged violation that the guidelines or maybe the policies as a whole are unconstitutional, I guess, on their face? Is it one or the other? I mean, I may have to ask counsel about this, but what's your understanding? I've thought that they've it's not an either or they've linked them. That's the way I've always heard the way they present. Well, they have to be linked to do the Monell elements, right? Yeah. So you can't get away from the linkage.  But I'm still I mean, under Monell, you need a constitutional violation to get to the Monell elements unless the policy itself is unconstitutional. What they said today is they said that that the guidelines plus the actions of the employees, which they do not want to separate, they've rejected that precept. And they said that all of that together violates Troxel. I think because what they said is, is that it embodies a presumption of parental unfitness and substituting school judgment for parent judgment in the specific topic of gender expression and identity. I think that's what they said, Judge. Again, I don't think there's there's authority for that. The when you start parsing it on Monell, they have significant problems to establish district liability, even if you take everything they've said is true. So I just I think that's why the district court was right and that the case should be affirmed. And you can do it on the constitutional right grounds or you could do it on the municipal liability grounds. You got two orders. Yeah, the Monell was the second one, and that's technically the one on the First Amendment complaint. But Judge Wong noted in a footnote that he already looked at the constitutional, too. So you just need one of the two and either one of them, I think, supports the dismissal here. Thank you. I appreciate the time to answer all your questions. Thank you, counsel. I'm going to give you 30 seconds. I don't I want to make sure we're not putting any words in your mouth. So why don't why don't I promise myself I wouldn't say anything unless I had one discreet thing and I don't. So unless there are any questions. All right. Well, actually, we've all been debating again what your substantive due process claim is, which has to be narrowly defined under constitutional precedent. Can you state it for us as best you can? Yes, it's the the core issue is that. Well, there was one point I was going to address with the court, which was the Truxell issue. It is far more than a child custody case. Truxell is talking about the deference to the parents when the state interferes with the decision affecting the best interest of the child. That's the constitutional injecting themselves into it. So they're forcing the custodial mother to allow. I think it was grandparent visitation. Correct. And it says you can't inject yourself here and just hear the school's not injecting. Well, the Justice O'Connor's heart of her decision was that the judge was affording and the statute was affording no deference at all to the parents. That's the problem with these district secrecy policies writ large. The guidelines, the FAQ, all of that is there's no deference to the parents. But that can't be a substantive substantive due process. Wright can't be no deference to the parents. That's not recognized by the Supreme Court. They've told us not to expand substantive due process. You've got to fit it in a box. Well, it's clearly downstream of the longstanding presumption that parents are presumed to act in the best interest of the child. That's the substantive due process, right? That the what Justice O'Connor has taken to task in Tromso is a presumption that the judge could do it better. These district's policies are saying the district can do it better. It has the same infirmity in light of that. That would be my position. Thank you, counsel. Well, it's been an interesting morning and we really appreciate these arguments. They went a little longer, but it's a challenging case. And the panel appreciates your briefing, your arguments, and we'll take the case now as submitted. And it's now our turn to grapple with all of this. So thank you very much. The case is submitted. Counsel are excused and the court will stand in recess.